In the Matter of JAMES M. SEGRUE, Respondent, v CITY OF SCHENECTADY, Appellant.

Third Department, December 17, 1987

### APPEARANCES OF COUNSEL

*Alfred L. Goldberger, Corporation Counsel (Guido A. Loyola* of counsel), for appellant.

*Gordon, Siegel, Mullaney & Gordon (Harold D. Gordon* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Petitioner worked for seven years as purchasing agent for respondent and was responsible for purchasing all goods and materials utilized by respondent's departments. His duties

also included mail distribution, photocopying, management of fixed assets and inventory, and disposal of inventory.

In February 1986, petitioner was served with a written notice of discipline alleging two sets of charges: (1) unjustified absence from work on 10 specific dates in December 1985 and January and February 1986 (hereinafter the time charges), and (2) misfeasance in the conduct of a surplus property sale on January 30, 1986. The second charge contained one specification consisting of 13 separate counts of misconduct (hereinafter the surplus property sale charges). Two preliminary sessions were held. At the conclusion of the first session, the Hearing Officer mandated that respondent furnish petitioner with a bill of particulars. The second session was held because a prosecuting attorney for respondent released statements to the press that petitioner was being investigated by the District Attorney's office to determine if there were grounds for bringing criminal charges against petitioner. At such hearing, respondent admitted that there were no criminal charges pending, and that there was no evidence of any criminal activity.

At the conclusion of the hearings, the Hearing Officer found that the time charges were unfounded and that all but four counts of the surplus property sale charges were unfounded. The four counts to which the Hearing Officer assigned merit were (1) improper opening and lack of verification of bids (count [f]), (2) failure to require submission of a 10% deposit consisting of a verified check or money order (count [g]), (3) permitting bidders to reject their bids after the sale (count [i]), and (4) over-all improper conduct with regard to the public auction process (count [m]). On August 4, 1986, a 1,400-page transcript of the hearing along with 53 pages of findings of fact and recommendations of the Hearing Officer were delivered to respondent's Mayor. Approximately four hours after delivery to her of the documents, the Mayor rendered her decision. She disagreed with the Hearing Officer with respect to the time charges and found an unspecified violation based on these charges. The Mayor adopted the Hearing Officer's finding of guilt with respect to the four counts of the surplus property sale charges. As a result, she ordered that petitioner be discharged.

Petitioner commenced a CPLR article 78 proceeding challenging the determination and seeking reinstatement with back pay. Preliminarily, Supreme Court held that the Mayor's determination overruling the Hearing Officer's finding on the

time charges was not supported by any findings of her own and remitted the matter for such findings. Upon review of the Mayor's supplemental findings of fact, Supreme Court concluded that there was insufficient evidence to support the violation based on the time charges. With respect to the surplus property sale charges, the court upheld the findings that petitioner failed to verify the bid process resulting in the acceptance of a low bid (count [f]) and accepted personal checks instead of certified check or money order (count [g]). Supreme Court also affirmed the finding that petitioner allowed a bidder to withdraw a winning bid, although the court found justification for this act. The court rejected the finding that petitioner allowed a bidder to change his bid so as to become the high bidder because such finding was "predicated solely on conjecture". Although Supreme Court affirmed the finding that petitioner's over-all conduct was improper (count [m]), it determined that said finding was so vague as to be meaningless. Finally, Supreme Court concluded that the penalty imposed was disproportionate to the offense and, accordingly, modified the penalty from dismissal to a two-month suspension without pay. This appeal by respondent ensued.

█ Initially, we agree with respondent that Supreme Court should have transferred the proceeding to this court. Where an agency determination is made after an adjudicatory hearing, judicial review of the factual findings is sought by way of a CPLR article 78 proceeding in the nature of certiorari (CPLR 7803 [4]). The standard of review is substantial evidence (CPLR 7803 [4]; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 230-231) and the proceeding must be transferred to the Appellate Division (CPLR 7804 [g]). Even where the proceeding raises other issues such as procedural challenges, review of which is in the nature of mandamus to review (CPLR 7803 [3]; *see,* Siegel, NY Prac § 561), the proceeding is a "certiorari" one and must be transferred to the Appellate Division (CPLR 7804 [g]; *see,* Siegel, NY Prac § 568, at 796). In determining the appropriate procedure, the petition must be examined to determine whether a substantial evidence issue is raised *(see, Matter of Schanbarger v New York State Commr. of Social Servs.,* 109 AD2d 1037, *lv denied* 65 NY2d 604). However, the labels used by the petitioner are not dispositive. Rather, the substance of the petition must be examined. Here, although the petition challenges the Mayor's action as "arbitrary, capricious and contrary to law", it is apparent that a challenge is being made to the factual findings of the Mayor.

Thus, regardless of the terms used by petitioner, a substantial evidence issue has been raised, necessitating transfer to this court *(see, Matter of Pratt v Melton,* 72 AD2d 887, *affd* 51 NY2d 837; *Matter of Mistler v Tofany,* 39 AD2d 710, *affd* 30 NY2d 870). Under these circumstances, this court is not bound by Supreme Court's findings and will treat the proceeding as if it had been properly transferred here initially *(see, Matter of Smith v Coughlin,* 111 AD2d 503, 504-505; *see,* CPLR 7804 [g]).

■ Turning to the merits, the Hearing Officer's determination was rendered after hearing the testimony of 30 witnesses and analyzing 94 exhibits. Such evidence culminated in a 1,400-page transcript and a 53-page finding of fact and recommendations. Yet, less than four hours after receiving such materials, the Mayor claims to have "reviewed all of the relevant transcripts and evidence" and rendered a different decision. At this point, we note that it is clear from the record that the administration of respondent holds a great deal of animosity toward petitioner. Further, the majority of the charges are either extremely vague or concern hypertechnical alleged violations. These factors must be kept in mind when reviewing the Mayor's decision. With respect to the time charges, the reports of two private investigators hired to follow petitioner were inadequate and deficient. The investigators did not know where petitioner lived, they monitored the whereabouts of his car rather than petitioner himself even though he owned two cars which were not used exclusively by petitioner, they failed to check if he was on business for respondent when he was out of the office, and they did not know there was a rear door entrance to the place of petitioner's employment until four days into the investigation. The Mayor's finding of guilt with respect to the time charges was unsupported by substantial evidence in the record and must be set aside.

With respect to the surplus property sale charges, we note that such charges initially consisted of 13 separate counts of alleged impropriety in the conduct of a surplus property sale conducted on January 30, 1986. The Hearing Officer's report, which was adopted in toto by the Mayor, recommended findings of guilt on only four of them. In essence, these four sustained counts of the surplus property sale charges consisted of findings that petitioner (1) allowed a bidder to alter his bid and accepted a bid deposit of less than the full 10% as set forth in the terms of sale, (2) accepted personal checks instead

of certified checks or money orders on 3 of 10 bids, (3) permitted, contrary to terms of sale, a high bidder on an item to withdraw his bid because a mistake in the description of the property on the bid sheet was discovered after the sale, and (4) exemplified a dereliction in duty by his over-all conduct of a public auction.

Petitioner admitted the findings of the second and third sustained counts. However, it is clear that these two counts do not constitute misconduct. The public auction was based on certain terms of sale. Respondent offered no proof that petitioner was duty-bound to enforce all of the terms of sale or that he was without discretion to vary the terms of sale. Regarding the second sustained count, the record demonstrates that the bidders were responsible people, two of whom were Assistant Police Chiefs with respondent. The third sustained count involves a misdescription of property. The item was advertised as a 1979 Chevrolet Suburban four-wheel drive vehicle. After the bid was accepted and the bidder went to claim the vehicle, he learned that it was a station wagon with much less value. Also, the location of the property was misdescribed such that the bidder could not have discovered the mistake. Petitioner allowed the bidder to withdraw his bid, which was technically in violation of the terms of sale. In both cases, one could argue that petitioner should have enforced the terms of sale. However, his actions can hardly be said to constitute misconduct.

The first sustained count is more substantial. Regarding one item for sale, the bid sheet included bids of $135 and $155.21. The $135 figure had been underlined in red, the procedure used by petitioner to indicate a winning bid. However, the underlining was erased and the $155.21 figure underlined. Petitioner explained that he had mistakenly underlined the wrong figure and then corrected his mistake. However, the Hearing Officer and the Mayor found that the "1" in $155.21 was of darker ink and in a different stroke such that it appeared that the numeral was added later. Further, that particular bidder made a number of bids and his bid sheet showed a total of $879.70 in bids. Such figure would be correct if he had bid $55.21 and not $155.21. Also, the bidder's deposit of $87.97 is the exact 10% required deposit if the $879.70 total bids figure was correct. These facts provide substantial evidence to support the Mayor's finding that petitioner altered the bid or allowed the bidder to do so.

Finally, the last sustained count is extremely vague. Fur-

ther, it assumes that petitioner committed all of the surplus property sale charges. Since only one count of the surplus property sale charges is supportable, it cannot be said that petitioner's over-all conduct was improper.

The matter must be remitted to the Mayor for imposition of a reasonable penalty based on the one sustainable violation.

KANE, WEISS, MIKOLL and LEVINE, JJ., concur.

Judgment vacated, on the law, without costs; determination modified by annulling so much thereof as found petitioner guilty of charge I and counts (g), (i) and (m) of charge II; matter remitted to the Mayor of the City of Schenectady for imposition of a penalty on count (f) of charge II; and, as so modified, confirmed.